IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEXUS PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EXELA PHARMA SCIENCES, LLC, <br><br> Defendant. | Civil Action No. 22-1233-GBW |

Kelly E. Farnan, Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Imron T. Aly, Kevin Nelson, Matthew T. Wilkerson, Julie A. Vernon, ARENTFOX SCHIFF LLP, Chicago, IL; Ahmed M.T. Riaz, Max Heckendorn, ARENTFOX SCHIFF LLP, New York, NY.

*Counsel for Plaintiff*

Robert M. Oakes, Douglas E. McCann, Gregory R. Booker, FISH & RICHARDSON P.C., Wilmington, DE; Deanna J. Reichel, Sarah E. Jack, Madison Murhammer Colon, FISH & RICHARDSON P.C., Minneapolis, MN; Corrin N. Drakulich, Christina D. Brown-Marshall, Dexter S. Whitley, Charles N. Reese, FISH & RICHARDSON P.C., Atlanta, GA; Caroline G. Koonce, FISH & RICHARDSON P.C., Washington, DC; Satish Chintapalli, CHINTAPALLI LAW FIRM PLLC, Cary, NC.

*Counsel for Defendant*

**MEMORANDUM OPINION**

July 11, 2025
Wilmington, Delaware

_[Signature]_
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

The following motions and requests from Plaintiff[1] are pending before the Court and are the subject of this Memorandum Opinion:

1. Nexus' Motion for Partial Summary Judgment (MSJ No. 1) ("Nexus' First Motion for Summary Judgment") (D.I. 207), which has been fully briefed (D.I. 210; D.I. 228; D.I. 257);

2. Nexus' Motion for Partial Summary Judgment (No. 2) of Infringement for the '369 Patent ("Nexus' Second Motion for Summary Judgment") (D.I. 211)[2] (together with Nexus' First Motion for Summary Judgment, "Nexus' Motions for Summary Judgment"), which has been fully briefed (D.I. 213; D.I. 230; D.I. 259);

3. Nexus' Request for Oral Argument (D.I. 263), which pertains to Nexus' Motions for Summary Judgment;

4. Nexus' Motion to Strike Anticipation Opinions of the Opening Expert Report of Dr. Robert Myers ("Nexus' Motion to Strike") (D.I. 174), which has been fully briefed (D.I. 175; D.I. 176); and

5. Nexus's request for a teleconference on Nexus' Motion to Strike (D.I. 179).

---

[1] The Plaintiff is Nexus Pharmaceuticals, Inc. ("Nexus" or "Plaintiff"). The Defendant is Exela Pharma Sciences, LLC ("Exela" or "Defendant").

[2] Nexus' Second Motion for Summary Judgment (D.I. 211) inadvertently mirrors, verbatim, the Nexus' First Motion for Summary Judgment (D.I. 207). The Court uses as a title for Nexus' Second Motion for Summary Judgment the title that Nexus uses in its opening brief in support of its Second Motion for Summary Judgment (D.I. 213).

For the following reasons, the Court grants-in-part and denies-in-part Nexus' First Motion for Summary Judgment (D.I. 207), denies Nexus' Second Motion for Summary Judgment (D.I. 211), denies-as-moot Nexus' Request for Oral Argument which pertains to Nexus' Motions for Summary Judgment (D.I. 263), denies-as-moot Nexus' Motion to Strike (D.I. 174), and denies-as-moot Nexus' request for a teleconference on Nexus' Motion to Strike (D.I. 179).

## I. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

## II. DISCUSSION

The Court divides its Discussion into the following Sections: (A) The Court Grants-in-Part and Denies-in-Part Nexus' First Motion for Summary Judgment; (B) The Court Denies Nexus' Second Motion for Summary Judgment; and (C) The Court Denies-as-Moot Nexus' Motion to Strike.

### A. The Court Grants-in-Part and Denies-in-Part Nexus' First Motion for Summary Judgment

The Court divides this Section into the following Subsections: (1) Background, (2) Anticipation Law, and (3) Legal Analysis.

1.   **Background**[3]

This action concerns U.S. Patent Nos. 11,464,752 ("the '752 patent"), 11,426,369 ("the '369 patent"), and 11,571,398 ("the '398 patent") (together, the "Asserted Patents"). *See* D.I. 210 at 1. The Asserted Patents "generally relate to 5 mg/mL ephedrine sulfate products" that are "stable and sterile" for certain "periods of time, at least six months under elevated temperature or twelve months under room temperature." *See* D.I. 210 at 3. The prior art required higher concentrations of ephedrine sulfate, i.e., "at levels of 50 mg/mL, which" others used "to manually prepare 5 mg/mL syringes." *See* D.I. 210 at 3. "Entities who manually prepared syringes included 'compounders.'" *See* D.I. 210 at 3.

On November 13, 2024, Exela served the Opening Report of Dr. Myers ("the Myers Opening Report"). D.I. 210 at 4; D.I. 214-1, Ex. M. The Myers Opening Report opines that eight "Compounded Ephedrine Syringe Products" ("Ephedrine Syringe Products") anticipate claims 1-16 of the '752 patent, claims 1-9 of the '369 patent, and claims 1-9 of the '398 patent. D.I. 210 at 1; D.I. 214-1, Ex. M at 11-12, 128.

Dr. Myers characterizes the Compounded Ephedrine Syringe Products as "packaged syringes containing a sterilized, ready-to-use ephedrine sulfate composition." D.I. 214-1, Ex. M at 11. The eight products include: (1) CAPS PFS ("CAPS"); (2) Ameridose PFS ("Ameridose"); (3) Pharmedium PFS ("Pharmedium"); (4) Advanced Pharma PFS ("Advanced Pharma"); (5) SCA Pharma PFS ("SCA Pharma"); (6) IntegraDose PFS ("IntegraDose"); (7) Products from the 503B Product Reports-July-to-December 2018 ("2018 503B Report Products"); and (8) Products from the January 2019 FDA Outsourcing Facility Product Report ("2019 Outsourcing Product Report

---

[3] The Court briefly sets forth relevant background and otherwise assumes the parties' familiarity with this action.

4

Products"). D.I. 214-1, Ex. M ¶ 51. The 2018 503B Report Products and the 2019 Outsourcing Product Report Products are, as their names imply, a collection of products.

On February 28, 2025, Nexus moved for summary judgment that claims 1-16 of the '752 patent, claims 1-9 of the '369 patent, and claims 1-9 of the '398 patent "are not invalid as anticipated by the" Ephedrine Syringe Products. D.I. 210 at 1. Briefing is complete.

## 2.  Anticipation Law

"Under patent law, a single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). "While a single reference may expressly anticipate a claim where the reference explicitly discloses each and every claim limitation, the prior art need not be ipsissimis verbis (i.e., use identical words as those recited in the claims) to be expressly anticipating." *Bd. of Regents v. Bos. Sci. Corp.*, No. 18-392, 2024 U.S. Dist. LEXIS 99773, at *7-8 (D. Del. June 5, 2024) (citing *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed.Cir.1984)). "Instead, a reference may still anticipate if that reference teaches that the disclosed components or functionalities may be combined and one of skill in the art would be able to implement the combination." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1344 (Fed. Cir. 2016). Parties cannot combine multiple prior art references to show anticipation. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984) (observing that it "is hornbook law that anticipation must be found in a single reference, device, or process," and finding that "to combine the teachings of the references to build an anticipation . . . would be contrary to settled law"). With respect to references that *inherently* describe each and every limitation set forth in a patent claim, inherency "may not be established by probabilities or possibilities." *Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 454 n.13 (D. Del. 2021) (quoting *In re Montgomery*, 677 F.3d 1375, 1380 (Fed. Cir. 2012)).

"Although anticipation is a question of fact, it may be decided on summary judgment if there is no genuine dispute of material fact on the record." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 288 F. Supp. 2d 638, 647 (D. Del. 2003). "Whether a claim limitation is inherent in a prior art reference for purposes of anticipation is . . . a question of fact." *Ampex Corp. v. Eastman Kodak Co.*, 461 F. Supp. 2d 226, 228 (D. Del. 2006) (quoting *Finnigan Corp. v. International Trade Com'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999)).

3. **Legal Analysis**

Nexus raises several related and partially overlapping arguments on anticipation, including: (1) that Dr. Myers inappropriately combines the elements of multiple prior art references to assert anticipation, (2) that Dr. Myers does not describe how each element of each Compounded Ephedrine Sulfate Product satisfies each limitation of the asserted claims, (3) that Dr. Myers cannot use the CAPs product as a representative of the other Ephedrine Syringe Products, (4) that the CAPs product is not representative of the other Ephedrine Syringe Products, (5) that the CAPs product does not anticipate the asserted claims, (6) that none of the Ephedrine Syringe Products satisfy the stability and sterility limitations of the asserted claims, and (7) that the non-prior art materials about the CAPS product, upon which Dr. Myers relies to opine that the CAPs product anticipates the claimed inventions, do not support Dr. Myers' theory of anticipation. The Court addresses each argument in turn.

*First*, Nexus contends that Exela and Dr. Myers inappropriately combine the elements of multiple prior art references to assert anticipation. D.I. 210 at 1, 6. Exela, on the other hand, contends that Dr. Myers did not "combine products to opine that Nexus's claims are anticipated." D.I. 228 at 1.

The basis for Nexus' original concern is alluring since Exela expressly contemplated combining multiple prior art references in its invalidity contentions. *See* 175-1 Ex. F at PageID

6

2677, 2768, 2851 (stating that: "Each of the Ephedrine Syringe Products alone and/*or in combination* with one or more of the other prior art references disclosed in Exela's invalidity contentions . . . anticipates . . . the asserted claims" (emphasis added)).

However, Dr. Myers does not combine or attempt to combine the elements of multiple prior art references to assert anticipation in his reports. Rather, Dr. Myers opines, for example, that "each" of the Ephedrine Syringe Products individually anticipate the claimed inventions. *See, e.g.*, D.I. 214-1, Ex. M ¶ 352 (opining that "each" of the prior art references anticipates the claimed inventions). Dr. Myers also correctly acknowledges that only a *single* prior art reference may anticipate a claimed invention. D.I. 175-1, Ex. A ¶ 27 (acknowledging that anticipation requires "that each and every element of a claim, as properly construed, is disclosed either explicitly or inherently in *a single prior art reference*" (emphasis added)). Although Dr. Myers purportedly does not describe how each element of each reference satisfies each limitation of the asserted claims (as discussed in the next paragraph), that does not necessarily mean that Dr. Myers combined the elements of multiple references. For at least these reasons, Nexus fails to establish that Dr. Myers combines the elements of multiple prior art references, and the Court denies Nexus' First Motion for Summary Judgment in this respect.

*Second*, Nexus contends that Dr. Myers does not analyze how each element of "each Compounded Ephedrine Sulfate Product" satisfies each limitation of the asserted claims. D.I. 210 at 6. At least in this Section of Nexus' brief, however, Nexus does not identify which elements from which Ephedrine Sulfate Products are omitted from Dr. Myers' anticipation analysis. The Court will not, in the first instance, examine the entirety of Dr. Myers' reports (or the excerpts thereof) to identify which elements of which Ephedrine Sulfate Products are omitted from Dr. Myers' analysis. *See Live Face on Web, LLC v. Rockford Map Gallery, LLC*, No. CV 17-539,

7

2020 WL 13718835, at *1 n.1 (D. Del. Dec. 11, 2020) ("Judges are not like pigs, hunting for truffles buried in briefs."). Thus, the Court denies Nexus' First Motion for Summary Judgment in this respect.

*Third*, Nexus contends that Dr. Myers cannot use the CAPs product as a representative of the other Ephedrine Syringe Products. D.I. 210 at 7 (contending that the CAPs product "does not excuse a reference-by-reference analysis" and that using the CAPS product as a representative product constitutes "an improper analysis"). As the Court discussed above, only a "single prior art reference" may anticipate a patent claim. *See Trintec Indus.*, 295 F.3d 1292, 1295; *see also Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726-27. Here, Dr. Myers' occasional reliance on the CAPs product as a representative of the other Ephedrine Syringe Products improperly derogates from the "single prior art" requirement.

Each of Exela's contentions in support of its "representative" theory of anticipation are unavailing. First, Exela contends that "it is sufficient that one of the six prior art products meets the claimed stability limitations." D.I. 228 at 10. Exela is, of course, correct that one prior art reference may anticipate a claimed invention. That one prior art reference may anticipate a claimed invention, however, does not empower the same reference to represent other prior art references.

Next, Exela contends that its representative product "approach is appropriate for an anticipation analysis" because "the other Compounded Ephedrine Syringe Products have the same formulation, are made following FDA cGMP Guidelines, and are administered the same way as the representative CAPS product." D.I. 228 at 10; *see id.* at 11 (further discussing "the manufacturing process" for each of the Ephedrine Syringe Products). However, Exela provides no supporting case law for this argument and, as discussed above, only a "single prior art reference" may anticipate a patent claim. *See Trintec Indus.*, 295 F.3d 1292, 1295.

8

In addition, Exela contends that Dr. Myers' opinion that the prior art references "are all the same in relevant part . . . raises a fact issue." D.I. 228 at 11; *see id.* at 10 ("There are Material Factual Disputes as to Whether CAPS Is Representative of All the Compounded Ephedrine Syringe Products"). However, Dr. Myers' opinion also raises a legal issue that can be resolved without recourse to the purported factual issue. As described above, that legal issue (that only a single prior art reference may anticipate a claimed invention) forecloses Exela's "representative product" argument.

For the foregoing reasons, the Court grants' Nexus' First Motion for Summary Judgment in this respect, in that Exela and Dr. Myers cannot use the CAPs product as a representative product of the other Ephedrine Syringe Products to opine that the other Ephedrine Syringe Products anticipate the claimed inventions.

*Fourth*, Nexus contends that the CAPs product is not representative of the other Ephedrine Syringe Products. D.I. 210 at 7. Nexus postulates variation "between the products" that "precludes conflating them." D.I. 210 at 7. The Court denies this argument as moot, without prejudice, since the Court has already held above that Exela and Dr. Myers cannot use the CAPs product as a representative product.

*Fifth*, Nexus contends that the CAPs product does not anticipate the asserted claims. D.I. 210 at 8. The primary basis on which Nexus contends that the CAPs product does not anticipate the asserted claims is that "Dr. Myers does not show how the CAPS product meets the claimed stability requirements." D.I. 210 at 8.[4] *Sixth*, Nexus contends that none of the other Ephedrine

---

[4] Nexus also appears to contend that, in addition to the stability limitations, Exela fails to show how CAPs satisfies other "claim limitation[s]." D.I. 257 at 6; *see* D.I. 210 at 8 ("Nor does the CAPS product anticipate any claims by itself, as Dr. Myers relies on the CAPS PFS product only for some claim terms and not others—*for example* for 'sterilized' formulations for the '752 and

9

Syringe Products satisfy the stability and sterility limitations of the asserted claims. D.I. 210 at 8. The Court considers Nexus' fifth and sixth arguments together.

Regarding the stability limitations of the Asserted Patents, Nexus asserts that all "of the asserted claims in this case require . . . sterility and stability . . . for 12 months at 25°C and 40% RH and/or 6 months at 40°C and 75% RH." D.I. 210 at 8. Nexus contends that "Dr. Myers has not shown that any of the Compounded Ephedrine Syringe Products satisfy any" of these limitations. D.I. 210 at 8. In addition, Nexus contends that Exela and Dr. Myers "do not have any data" that demonstrates that the Ephedrine Syringe Products meet these limitations. D.I. 210 at 8.

Exela responds that "the issue" raised by Nexus does not concern "a lack of data" but rather "that Nexus thinks the data in the record is not sufficient." D.I. 228 at 14. Exela believes the data in the record is sufficient to show that the IntegraDose and CAPs products inherently meet the sterility and stability limitations of the Asserted Patents. D.I. 228 at 6. Exela points to the "6-month stability data . . . at the claimed room temperature conditions (25°C / 60% relative humidity)" for the IntegraDose product and the "3-month stability data . . . at similar conditions (15°C to 30°C / <65% relative humidity)" for the CAPs product. D.I. 228 at 6-7, 14.

Exela also raises that "Dr. Myers points out" that "the Compounded Ephedrine Syringe Products are made by diluting one of the FDA-approved 50 mg/mL ephedrine sulfate products (like AKOVAZ) and opines that this dilution (which is simply adding standard saline solution),

---

'398 patents but not the claimed stability requirements." (emphasis added)). However, Nexus has not developed this conclusory argument and the Court will not examine that which Nexus has not developed. *See ECB USA, Inc. v. Savencia, S.A.*, No. CV 19-731-RGA, 2020 WL 5369076, at *4 (D. Del. Sept. 8, 2020) ("As a general prudential rule, courts only decide issues that are fairly and fully presented. Therefore, cursory arguments not fully developed by the parties are waived."); *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 441 (D. Del. 2023) ("[A]rguments . . . not squarely argued[] are considered [forfeited].").

coupled with the data on the compounded products, does not change the stability characteristics of the formulation." D.I. 228 at 15.

Exela recounts that, in light of the foregoing, "Dr. Myers opines that the CAPS and IntegraDose products would meet the claimed stability limitations if left at the claimed room temperature conditions for the full 12 months and, therefore, *inherently* anticipate Nexus's claims." D.I. 228 at 7 (emphasis added). In addition, Exela asserts that the disagreement between the parties on whether the foregoing is sufficient to show that the IntegraDose and CAPs products inherently anticipate Nexus' claims constitutes "a classic fact issue and precludes summary judgment." D.I. 228 at 14.

Exela is correct that the disagreement between the parties (on whether the stability data in the record concerning the IntegraDose and CAPs products and, that those references were made with an FDA-approved 50 mg/mL ephedrine sulfate product like AKOVAZ, are sufficient to show that the IntegraDose and CAPs products inherently meet the sterility and stability limitations of the claimed inventions) constitutes a factual dispute that is appropriate for resolution not by the Court, but by the jury. *See Ampex Corp.*, 461 F. Supp. 2d 226, 228 ("Whether a claim limitation is inherent in a prior art reference for purposes of anticipation is . . . a question of fact."). Thus, the Court denies Nexus' first Motion for Summary Judgment in this respect as it pertains to the IntegraDose and CAPs products.[5] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment

---

[5] Nexus also raises that Dr. Myers opined that a POSA "would still confirm [stability] as part of product development." D.I. 210 at 9; *see* D.I. 210 at 9-10 (raising similar arguments / statements from Dr. Myers). Exela responds that Dr. Myers testified that a POSA "would conduct tests simply as a 'regulatory requirement,' not because of any lack of belief in stability." D.I. 228 at 17. This and similar disagreements further demonstrate that the parties genuinely disagree on the factual inquiry of whether the IntegraDose and CAPs products inherently meet the limitations of the asserted claims.

11

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

However, as Nexus observes, "Exela does not dispute that for the majority of the Compounded Ephedrine Syringe Products (all but CAPS and IntegraDose) there is no stability and/or sterility data cited at all." D.I. 257 at 9. Without any data or evidence to substantiate that the other Ephedrine Syringe Products meet the sterility and stability limitations of the claimed inventions, Exela will be unable to demonstrate that the other Ephedrine Syringe Products anticipate the claimed inventions. Therefore, the Court grants Nexus' First Motion for Summary Judgment in this respect as it pertains to the Ameridose, Pharmedium, Advanced Pharma, and SCA Pharma products, as well as the 2018 503B Report Products and the 2019 Outsourcing Product Report Products.[6]

*Seventh*, Nexus complains that "Dr. Myers relies on non-prior art materials about how CAPS PFS products are now made, when that does not and cannot show how any of the claimed steps compare to anything in the prior art." D.I. 210 at 8. As an initial matter, the use of extrinsic material by an expert to describe a prior art reference is not prohibited. *See Hospira, Inc. v. Fresenius Kabi USA, LLC*, 946 F.3d 1322, 1329 (Fec. Cir. 2020) ("Extrinsic evidence can be used

---

[6] The Court notes the paradox arising from Exela's theories of anticipation and inadequate written description. Regarding anticipation, Exela contends that the stability characteristics of the claimed invention are inherently met by the prior art, even though Dr. Myers lacked any data on the stability limitations for some of the prior art references and had asynchronous data on the stability limitations for other prior art references. Regarding inadequate written description, Exela contends that the stability data in the shared specification of the Asserted Patents is insufficient to show that the inventors possessed the invention, since the specification only includes data acquired from testing the stability of the recited formulation in glass, but not plastic, containers. As such, Exela relies on imperfect stability data to support its theory of anticipation, while simultaneously condemning Nexus for its reliance on imperfect stability data to support Nexus' theory of written description. As with Exela's theory on written description, the jury, and not the Court, will resolve the factual disputes arising from Exela's theory on anticipation as that theory pertains to the stability and sterility limitations of the asserted claims.

to demonstrate what is 'necessarily present' in a prior art embodiment even if the extrinsic evidence is not itself prior art." (citation omitted)). Notwithstanding, Nexus does not substantiate its conclusory argument and, as above, the Court will not examine that which Nexus fails to explain.

For the foregoing reasons, the Court grants-in-part and denies-in-part Nexus' First Motion for Summary Judgment. Since the Court was able to resolve Nexus' First Motion for Summary Judgment without oral argument, the Court denies-as-moot Nexus' Request for Oral Argument (D.I. 263) as it pertains to Nexus' First Motion for Summary Judgment.

**B.     The Court Denies Nexus' Second Motion for Summary Judgment**

"Given the Court's denial-in-part of [Nexus'] first ranked summary judgment motion, the Court denies" Nexus' Second Motion for Summary Judgment "in accordance with its ranking procedures." *See Lindis Biotech v. Amgen Inc.*, No. CV 22-35-GBW, 2024 WL 4869579, at *4 (D. Del. Nov. 22, 2024). Since the Court was able to resolve Nexus' Second Motion for Summary Judgment without oral argument, the Court denies-as-moot Nexus' Request for Oral Argument (D.I. 263) as it pertains to Nexus' Second Motion for Summary Judgment.

**C.     The Court Denies-as-Moot Nexus' Motion to Strike**

On January 3, 2025, Nexus filed its Motion to Strike. D.I. 174. Since Nexus' Motion to Strike raises the same issues that are the subject of Nexus' subsequently filed First Motion for Summary Judgment (*see* D.I. 210 at 4 ("Nexus sought to strike these opinions through a Motion to Strike which was filed on January 3, 2025, although no opinion has been rendered. Nexus now moves for summary judgment on this issue.")), the Court denies-as-moot Nexus' Motion to Strike. Since the Court was able to resolve Nexus' Motion to Strike without a teleconference, the Court denies-as-moot Nexus' request for a teleconference on Nexus' Motion to Strike (D.I. 179).

## III.  CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Nexus' Motion for Partial Summary Judgment (MSJ No. 1) (D.I. 207), denies Nexus' Motion for Partial Summary Judgment (No. 2) of Infringement for the '369 Patent (D.I. 211), denies-as-moot Nexus' Request for Oral Argument which pertains to Nexus' Motions for Summary Judgment, denies-as-moot Nexus' Motion to Strike Anticipation Opinions of the Opening Expert Report of Dr. Robert Myers (D.I. 174), and denies-as-moot Nexus' request for a teleconference (D.I. 179) on Nexus' Motion to Strike.